| | |
|---|---|
| Joseph E. Bain | Mark A. Mintz |
| Texas Bar No. 24085187 | *(Pro Hac Vice Application Forthcoming)* |
| Amy K. Anderson | JONES WALKER LLP |
| Texas Bar No. 24077064 | 201 St. Charles Avenue |
| Megan Young-John | New Orleans, Louisiana 70170-5100 |
| Texas Bar No. 24088700 | Tel:   (504) 582-8000 |
| JONES WALKER LLP | Fax:  (504) 582-8583 |
| 811 Main Street, Suite 2900 | Email:  mmintz@joneswalker.com |
| Houston, Texas 77002 | |
| Tel:   (713) 437-1800 | Kristina M. Johnson |
| Fax:  (713) 437-1810 | *(Pro Hac Vice Application Forthcoming)* |
| Email:  jbain@joneswalker.com | JONES WALKER LLP |
|         aanderson@joneswalker.com | 190 E. Capitol Street, Suite 800 |
|         myoungjohn@joneswalker.com | Jackson, Mississippi 39201 |
| | Tel:   (601) 949-4900 |
| | Fax:  (601) 949-4804 |
| | Email:  kjohnson@joneswalker.com |

*Counsel to Plaintiff Reorganized Debtor PHI Aviation, LLC f/k/a PHI, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PHI, Inc., *et al.*,[1] | § | Case No. 19-30923-hdh11 |
| | § | |
| Reorganized Debtors. | § | (Jointly Administered) |
| | | |
| PHI Aviation, LLC, f/k/a PHI, Inc. | § | |
| | § | |
| Plaintiff, | § | Adversary Proc. No. _____ |
| | § | |
| v. | § | |
| | § | |
| Fifth Third Bank, f/k/a Fifth Third Equipment Finance Company, | § | |
| | § | |
| Defendant. | § | |
| | § | |

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: PHI Aviation, LLC f/k/a PHI, Inc. (5707), PHI Health, LLC f/k/a PHI Air Medical, L.L.C. (4705), PHI Services, Inc. f/k/a PHI Tech Services, Inc. (5089), AM Equity Holdings, L.L.C. (0730), and PHI Helipass, L.L.C. (4187). The corporate headquarters and the mailing address for the Debtors listed above is 2001 SE Evangeline Thruway, Lafayette, LA 70508.

{HD106857.6}

**COMPLAINT FOR AVOIDANCE OF FRAUDULENT OBLIGATION, AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER, DISALLOWANCE OF CLAIM AND OBJECTIONS TO CLAIM**

Reorganized Debtor PHI Aviation, LLC f/k/a PHI, Inc. ("PHI"), by and through its counsel, Jones Walker LLP, brings this *Complaint for Avoidance of Fraudulent Obligation, Avoidance and Recovery of Fraudulent Transfer, Disallowance of Claim and Objections to Claim* (the "Complaint") against Fifth Third Bank, f/k/a Fifth Third Equipment Finance Company (the "Defendant"), and alleges as follows:

**NATURE OF THE CASE**

1. By this Complaint, and under sections 544, 548 and 550 of the United States Bankruptcy Code, 11 U.S.C § 101 e*t seq.* (the "Bankruptcy Code"), PHI seeks to avoid and recover obligations and transfers resulting from a 2018 Transaction (as defined and further described below) involving two nearly identical helicopters—as referred to below, the 2012 Helicopter and the 2014 Helicopter. PHI did not receive reasonably equivalent value for these transfers and obligations.

2. Further, PHI objects to and requests this Court disallow under section 502(b) any claim filed or asserted by the Defendant against PHI or that has been scheduled for the Defendant for the amount of any obligation avoided by order of this Court pursuant to TUFTA and sections 544(b)(1), 548 and 550 of the Bankruptcy Code. In addition, PHI objects to and requests this Court disallow under section 502(b) of the Bankruptcy Code those rejection damages that Defendant seeks for Incidental Damages and Tax Indemnity in the total amount of $3,867,333.26. Finally, PHI seeks to disallow any claim filed or asserted by the Defendant against PHI or that has been scheduled for the Defendant under section 502(d) of the Bankruptcy Code.

## PARTIES

3. On March 14, 2019 (the "Petition Date"), the now Reorganized Debtors each filed a voluntary petition for relief under the Bankruptcy Code, thereby commencing the above-captioned Chapter 11 bankruptcy cases (the "Chapter 11 Cases").

4. The Chapter 11 Cases were jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") under Case No. 19-30923-hdh11.

5. Plaintiff PHI is one of the Reorganized Debtors in the Chapter 11 Cases. Pursuant to the confirmed Modified Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Doc. No. 891][2] (the "Plan"), the Reorganized Debtors have the exclusive right, authority, and discretion to prosecute causes of action accruing before or after the Petition Date. *See* Doc. No. 891 at 37.

6. Upon information and belief, Defendant Fifth Third Bank f/k/a Fifth Third Equipment Finance Company is an Ohio Corporation and may be served with process by serving its registered agent, Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215, by any means provided for under the Bankruptcy Code and Rule 7004 of the Federal Rules of Bankruptcy Procedure.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334.

---

[2] *See* Doc. No. 947 (Order Authorizing Modifications to the Debtors' Confirmed Third Amended Joint Plan of Reorganization Without the Need for Further Disclosure or Solicitation of Votes). Any reference to a document no. is a reference to a document filed in the joint-administered bankruptcy cases captioned as *In re PHI, Inc., et al.*, Case No. 19-30923-hdh11, in this Bankruptcy Court.

8. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E), and (H).

9. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409 because the above-referenced Chapter 11 Cases are pending before this Court.

10. The statutory bases for relief sought herein are sections 502, 544, 548, and 550 of the Bankruptcy Code. This adversary proceeding is commenced pursuant to Rule 7001(1) of the Bankruptcy Rules.

11. Plaintiff PHI brings Counts VI and VII as objections to claims in this adversary proceeding pursuant to Rule 3007(b) of the Bankruptcy Rules.

12. Pursuant to Bankruptcy Rule 7008, PHI consents to entry of final orders or judgment by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

**FACTS AND PROCEDURAL HISTORY**

13. The Reorganized Debtors are leading providers of safe and reliable helicopter transportation services in the oil and gas industry and the healthcare and emergency medical services industry. The Reorganized Debtors operate over 250 aircraft worldwide, the majority of which they own.

14. On or about August 24, 2012, PHI and JPMorgan Chase Bank, N.A. ("JPMorgan") entered into a Lease Agreement (Aircraft/Daily Equivalent Interim Rent) (as modified, amended, supplemented, or restated from time to time, the "2012 Lease"), by which PHI leased a helicopter (the "2012 Helicopter") from JPMorgan. JPMorgan subsequently assigned the 2012 Lease to the Defendant.

15. On or about October 9, 2014, PHI and the Defendant entered into a Lease Agreement (Aircraft/Daily Equivalent Interim Rent) (as modified, amended, supplemented, or restated from time to time, the "2014 Lease" and together with the 2012 Lease, the "Lease Agreements") by which PHI leased another helicopter (the "2014 Helicopter") from the Defendant.

16. Notably, the 2012 Helicopter and the 2014 Helicopter are both Sikorsky S-92A helicopters with twin General Electric CT7-8A engines. Additionally, the 2012 Helicopter and the 2014 Helicopter have the same configurations. For all intents and purposes, the 2012 Helicopter and the 2014 Helicopter are effectively identical except for their age.

17. In 2018, the Defendant alleged that PHI failed to comply with certain financial covenants in the Lease Agreements. At the time, PHI was faced with the pending maturity of unsecured notes in the aggregate principal amount of $500 million. Taking advantage of such liquidity concerns, the Defendant was able to extract considerable value from PHI by compelling PHI to enter into a certain Amendment and Waiver to Lease Agreement (the "2018 Agreement") on or about October 29, 2018 under the threat of these so-called defaults.

18. Under the 2018 Agreement, the Defendant agreed to waive the alleged defaults of PHI related to financial covenants in the Lease Agreements and to amend the financial covenants in the 2014 Lease conditioned on (i) PHI agreeing to purchase the 2012 Helicopter for **$16,432,998.37** and (ii) PHI guaranteeing (the "Guaranty") an increased residual value of the 2014 Helicopter under the 2014 Lease to the total amount of **$12,647,958.98** (the "GRV Amount").

19. Under the Guaranty, should the Defendant sell the 2014 Helicopter for less than $12,647,958.98 at the end of the lease period, PHI would be required to pay the difference between the sale price and the GRV Amount to the Defendant. In other words, when the Defendant

ultimately sold the 2014 Helicopter, the amount owed under the Guaranty would be determined by subtracting the sale price from the GRV Amount of $12,647,958.98.

20. The sale of the 2012 Helicopter from Defendant to PHI closed on or about December 14, 2018.

21. At closing, PHI transferred $16,432,998.37 (the "Transfer") directly to the Defendant.

22. Following this transaction, PHI continued to lease the 2014 Helicopter from the Defendant and to make payments under the 2014 Lease.

23. Following the Debtors' bankruptcy filing on March 14, 2019, the Debtors were able to reach agreements with all of their aircraft lessors except the Defendant.

24. On May 7, 2019, the Debtors moved to reject the 2014 Lease. *See* Doc. No. 413.[3]

25. The Debtors' motion was granted on August 1, 2019, and the Debtors rejected the 2014 Lease. *See* Doc. No. 875.[4]

26. On August 30, 2019, the Defendant filed a claim for rejection damages allegedly arising from the rejection of the 2014 Lease. *See* Proof of Claim No. 54-1. The Defendant seeks lease rejection damages totaling at least $20,442,085.04, including $5,707,958.98 for amounts allegedly due on account of the Guaranty. The Defendant states that this amount was calculated by subtracting the fair market value of the 2014 Helicopter from the GRV Amount. Accordingly, the Defendant has attested that the fair market value of the 2014 Helicopter in August 2019 was only **$6,940,000**.

---

[3] Motion to Reject Helicopter Lease with Fifth Third Equipment Finance Company Under Section 365 of the Bankruptcy Code

[4] Order Authorizing the Debtors to Reject Helicopter Lease with Fifth Third Equipment Finance Company Under Section 365 of the Bankruptcy Code

27. The Defendant's own admission that the fair market value of the 2014 Helicopter equals $6,940,000 confirms that PHI overpaid for the 2012 Helicopter by *at least* **$9,492,998.37** (or $16,432,998.37 [what PHI paid under the 2018 Agreement] minus $6,940,000). Indeed, the 2014 Helicopter is newer than the 2012 Helicopter, and thus, the 2012 Helicopter is presumably worth less than $6,940,000. Yet less than one year after PHI purchased the 2012 Helicopter for $16,432,998.37, the Defendant attested that the *newer* helicopter was worth only $6,940,000.

28. The Defendant's own admission that the fair market value of the 2014 Helicopter was only $6,940,000 in August 2019 shows that PHI grossly overpaid for the 2012 Helicopter only 9 months earlier in December 2018.

29. Accordingly, PHI did not receive reasonably equivalent value for the Transfer.

30. In addition, the Defendant's proof of claim confirms that the obligations PHI incurred under the 2018 Agreement total $22,140,957.35 (*i.e.* the purchase price for the 2012 Helicopter plus the Guaranty). In return, PHI received the 2012 Helicopter, a waiver of its non-monetary defaults under the Lease Agreements, and an amendment of the financial covenants in the 2014 Lease.

31. The waiver of the non-monetary defaults under the Lease Agreements and the amendment of the financial covenants in the 2014 Lease were of little value to PHI, especially considering the 2012 Lease was effectively terminated by the 2018 Agreement, and the 2014 Lease was rejected in bankruptcy less than a year later.

32. This lopsided transaction greatly favored the Defendant. The purchase price of the 2012 Helicopter and the residual value guaranty of the 2014 Helicopter exceeded fair-market value by a combined total of at least $15,200,957.35, calculated as follows:

| | |
|---|---|
| Difference Between What PHI Paid for the 2012 Helicopter And the Value of the 2014 Helicopter, As Represented in Defendant's Proof of Claim | $9,492,998.37 |
| Amount Defendant Claims is Due Based on Guaranty (i.e., the GRV Amount of $12,647,958.98 minus the $6,940,000 value assigned by Defendant to the 2014 Helicopter in its Proof of Claim) | $5,707,958.98 |
| **Total** | **$15,200,957.35** |

33. Indeed, this cumulative amount of $15,200,957.35 (based on the Defendant's own valuation in its proof of claim) represents the minimum premium extracted from PHI by virtue of the 2018 Agreement. However, this amount assumes that the 2012 Helicopter is worth as much as the 2014 Helicopter. In reality, the premium extracted by Defendant was much higher.

34. Therefore, the value that PHI received from this transaction (the 2012 Helicopter and a waiver of the non-monetary covenants under the leases) was not reasonably equivalent to the value PHI paid or is obligated to the Defendant ($16,432.998.37 for the 2012 Helicopter and $5,707,958.98 under the residual value guaranty).

35. Accordingly, PHI did not receive reasonably equivalent value for incurring the obligations in the 2018 Agreement.

## COUNT I
### Avoidance of Fraudulent Obligation – 11 U.S.C. § 548(a)(1)(B)

36. PHI adopts and incorporates by reference the allegations in paragraphs 1 through 35 above as if fully set forth herein.

37. PHI entered into the 2018 Agreement within two years of the Petition Date.

38. PHI received less than reasonably equivalent value in exchange for the obligations incurred by the 2018 Agreement. In exchange for (a) the 2012 Helicopter (worth, at best, $6,940,000), (b) waiver of certain non-monetary defaults under the Lease Agreements, and (c) an

amendment of the financial covenants in the 2014 Lease, PHI incurred the obligation to pay the Defendant at least $22,140,957.35 (*i.e.* the purchase price for the 2012 Helicopter and the residual value guaranty). The waivers of the non-monetary defaults under the Lease Agreements and the amendment of the 2014 Lease were of little value to PHI, since the 2012 Lease was effectively terminated by the 2018 Agreement and the 2014 Lease was rejected in bankruptcy less than one year later.

39. On March 15, 2019, certain unsecured notes in the aggregate principal amount of $500 million were scheduled to mature. Therefore, in October 2018, when PHI entered into the 2018 Agreement, the Debtors were insolvent as a result of these upcoming maturities. Accordingly, PHI was insolvent when it entered into the 2018 Agreement, was rendered insolvent as a result of the obligations therein, was engaged in a business or a transaction for which any remaining property was an unreasonably small capital, and/or believed that it would incur debts that would exceed the Debtors' ability to pay as they matured.

40. For the foregoing reasons, the obligations PHI incurred in the 2018 Agreement are avoidable under 11 U.S.C. § 548(a)(1)(B).

## COUNT II
**Avoidance of Fraudulent Transfer – 11 U.S.C. § 548(a)(1)(B)**

41. PHI adopts and incorporates by reference the allegations in paragraphs 1 through 40 above as if fully set forth herein.

42. PHI made the Transfer within two years of the Petition Date on or about December 14, 2018. The Transfer was of PHI's property.

43. PHI received less than reasonably equivalent value for the Transfer. PHI paid $16,432,998.37 for the 2012 Helicopter. As evidenced by the Defendant's proof of claim filed

{HD106857.6}  9

less than a year later, the maximum fair market value of the 2012 Helicopter was, at best, $6,940,000 at the time the Transfer was made.

44. Moreover, by Count I of this Complaint, PHI seeks to avoid its underlying obligation in the 2018 Agreement to make the Transfer. Where the underlying obligation has been avoided, any payments on account thereof can no longer be supported by the value of debt satisfaction since no debt exists. For this additional reason, PHI did not receive reasonably equivalent value for the Transfer.

45. On March 15, 2019, certain unsecured notes in the aggregate principal amount of $500 million were scheduled to mature. Therefore, in December 2018, when the Transfer was made, the Debtors were insolvent as a result of these upcoming maturities. Accordingly, PHI was insolvent when the Transfer was made, was rendered insolvent as a result of the Transfer, was engaged in a business or a transaction for which any remaining property was an unreasonably small capital, and/or believed that it would incur debts that would exceed the Debtors' ability to pay as they matured.

46. For the foregoing reasons, the Transfer is avoidable under 11 U.S.C. § 548(a)(1)(B).

### COUNT III
### Avoidance of Fraudulent Transfer –
### 11 U.S.C. § 544 and V.T.C.A., Bus. & Comm. § 24.001, *et seq*.

47. PHI adopts and incorporates by reference the allegations in paragraphs 1 through 46 above as if fully set forth herein.

48. Under section 544 of the Bankruptcy Code, PHI brings this claim on behalf of its estate and creditors under the Texas Uniform Fraudulent Transfer Act, V.T.C.A., Bus. & Comm. § 24.001, *et seq*. (the "TUFTA").

49. PHI made the Transfer less than four years ago on or about December 14, 2018. The Transfer was of PHI's property.

50. PHI received less than reasonably equivalent value for the Transfer. PHI paid $16,432,998.37 for the 2012 Helicopter. As evidenced by the Defendant's proof of claim filed less than a year later, the maximum fair market value of the 2012 Helicopter was, at most, $6,940,000 at the time the Transfer was made.

51. On March 15, 2019, certain unsecured notes in the aggregate principal amount of $500 million were scheduled to mature. Therefore, in December 2018, when the Transfer was made, the Debtors were insolvent because the sum of the Debtors' debts was greater than all of the Debtors' assets at a fair valuation. In addition, PHI was engaged in a business or a transaction for which any remaining property was an unreasonably small capital, and/or believed that it would incur debts that would exceed the Debtors' ability to pay as they matured.

52. As shown by the Debtors' bankruptcy schedules, numerous creditors existed whose claims arose before and/or within a reasonable time after the Transfer was made.

53. For the foregoing reasons, the Transfer is fraudulent under sections 24.005(a)(2) and 24.006(a) of the TUFTA. PHI is entitled to recover the value of the Transfer, under section 24.008(a)(1) of the TUFTA and section 544(b)(1) of the Bankruptcy Code.

## COUNT IV
### Recovery of Fraudulent Transfer – 11 U.S.C. § 550

54. PHI adopts and incorporates by reference the allegations in paragraphs 1 through 53 above as if fully set forth herein.

55. The Defendant is the initial transferee of the Transfer.

56. The Transfer is avoidable under sections 544 and 548 of the Bankruptcy Code and applicable state law. Accordingly, PHI is entitled to recover the value of the Transfer from the Defendant under section 550(a) of the Bankruptcy Code.

57. Upon information and belief, the Defendant does not have any valid defenses to the recovery of the Transfer.

## COUNT V
### (Disallowance of Claims – 11 U.S.C. § 502(d))

58. PHI adopts and incorporates by reference the allegations in paragraphs 1 through 57 above as if fully set forth herein.

59. Section 502(d) of the Bankruptcy Code provides that the claim of any entity from which property is recoverable under section 550 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 544 or 548 of the Bankruptcy Code, shall be disallowed unless the transferee has paid the amount for which it is liable under section 550 of the Bankruptcy Code.

60. The Defendant is a transferee of the Transfer, which is avoidable under sections 544 and 548 of the Bankruptcy Code and applicable state law. The Transfer is property recoverable under section 550 of the Bankruptcy Code.

61. The Defendant has not paid the amount of the Transfer for which it is liable under section 550 of the Bankruptcy Code to PHI.

62. Under section 502(d) of the Bankruptcy Code, any and all claims of the Defendant against PHI must be disallowed until such time as the Defendant pays PHI the amount equal to the Transfer.

## COUNT VI
### (Objection to Rejection Claims – 11 U.S.C. § 502(b))

63. PHI adopts and incorporates by reference the allegations in paragraphs 1 through 62 above as if fully set forth herein.

64. Section 502(g)(1) of the Bankruptcy Code provides that a claim arising from rejection of an executory contract or unexpired lease under section 365 shall be determined, and allowed under subsections (a), (b), and (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen prepetition.

65. Section 502(b)(1) of the Bankruptcy Code provides that, if an objection is made, the court, after notice and a hearing, shall determine the amount of such claim and shall allow the claim in such amount, except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

66. Defendant filed a claim for rejection damages allegedly arising from the rejection of the 2014 Lease, including $5,707,958.98 for amount allegedly due on account of the Guaranty. *See* Proof of Claim No. 54-1.

67. Herein, Plaintiff has asserted claims under sections 544, 548 and 550 of the Bankruptcy Code as well as the Texas Uniform Fraudulent Transfer Act, V.T.C.A., Bus. & Comm. § 24.001, *et seq*. Plaintiff objects to Defendant's claim for rejection damages which this Court finds to be unenforceable against the Debtor or property of the Debtor pursuant to Plaintiff's asserted claims.

68. Under section 502(b) of the Bankruptcy Code, any and all claims of the Defendant against PHI must be disallowed to the extent that such claims are unenforceable against the Debtor or property of the Debtor pursuant to the claims asserted by Plaintiff against the Defendant herein.

69. Such objection to the Defendant's claim in this Complaint is authorized by Bankruptcy Rule 3007(b).

## COUNT VII
### (Objection to Rejection Claims – 11 U.S.C. § 502(b))

70. PHI adopts and incorporates by reference the allegations in paragraphs 1 through 69 above as if fully set forth herein.

71. Section 502(g)(1) of the Bankruptcy Code provides that a claim arising from rejection of an executory contract or unexpired lease under section 365 shall be determined, and allowed under subsections (a), (b), and (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen prepetition.

72. Section 502(b)(1) of the Bankruptcy Code provides that, if an objection is made, the court, after notice and a hearing, shall determine the amount of such claim and shall allow the claim in such amount, <u>except</u> to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

73. Defendant filed a claim for rejection damages allegedly arising from the rejection of the 2014 Lease, seeking lease rejection damages totaling at least $20,442,085.04. *See* Proof of Claim No. 54-1.

74. Defendant asserts that such amount includes $3,815,288.26 in "Incidental Damages" under the 2014 Lease Agreement, including "repair/maintenance, inspection, storage, retrieval, and insurance relating to the 2014 Helicopter, along with certain indemnities and other out-of-pocket costs and expenses."

75. Further, Defendant asserts that such amount includes $52,045.00 in Tax Indemnity.

76. Defendant, however, fails to provide any supporting documentation for the amounts sought as Incidental Damages and for Tax Indemnity.

77. As such, Plaintiff is unable to determine whether the amounts sought are enforceable under the 2014 Lease and therefore, objects to the amounts sought as Incidental Damages and Tax Indemnity.

78. Under section 502(b) of the Bankruptcy Code, any and all claims of the Defendant against PHI must be disallowed to the extent that such claims are unenforceable against the Debtor or property of the Debtor pursuant to the claims asserted by Plaintiff against the Defendant herein.

79. Such objection to the Defendant's claim in this Complaint is authorized by Bankruptcy Rule 3007(b).

WHEREFORE, for the foregoing reasons, PHI respectfully requests that the Court:

A. Enter judgment in favor of PHI and against the Defendant, under 11 U.S.C. § 548, avoiding the 2018 Agreement;

B. Enter judgment in favor of PHI and against the Defendant, under 11 U.S.C. §§ 548 and 550, avoiding the Transfer and ordering the Defendant to return the amount of the Transfer, plus interest, to PHI;

C. Enter judgment in favor of PHI and against the Defendant, under TUFTA and 11 U.S.C. §§ 544(b)(1) and 550, avoiding the Transfer and ordering the Defendant to return the amount of the Transfer, plus interest, to PHI;

D. Enter judgment in favor of PHI and against the Defendant, under 11 U.S.C. § 502(b), disallowing Defendant's Proof of Claim No. 54-1 for the amount of any obligation avoided by order of this Court pursuant to TUFTA and §§ 544(b)(1), 548, and 550 of the Bankruptcy Code.

E. Enter judgment in favor of PHI and against the Defendant, under 11 U.S.C. § 502(b), disallowing Defendant's Proof of Claim No. 54-1 in the additional amount of $3,867,333.26 as unenforceable against the Debtor or the Debtor's property pursuant to the 2014 Lease.

F. Enter judgment in favor of PHI and against the Defendant, under 11 U.S.C. § 502(d), disallowing any claims filed by the Defendant against PHI until the Defendant has paid the amount of the Transfer to PHI; and

G. Grant PHI such other and further relief as is just and appropriate under the circumstances.

[*Remainder of Page Intentionally Left Blank.*]

Dated: November 11, 2019

*Respectfully submitted,*

*/s/ Joseph E. Bain*

| | |
|---|---|
| Joseph E. Bain<br>Texas Bar No. 24085187<br>Amy K. Anderson<br>Texas Bar No. 24077064<br>Megan Young-John<br>Texas Bar No. 24088700<br>JONES WALKER LLP<br>811 Main Street, Suite 2900<br>Houston, Texas 77002<br>Tel:    (713) 437-1800<br>Fax:   (713) 437-1810<br>Email: jbain@joneswalker.com<br>         aanderson@joneswalker.com<br>         myoungjohn@joneswalker.com | Mark A. Mintz<br>*(Pro Hac Vice Application Forthcoming)*<br>JONES WALKER LLP<br>201 St. Charles Avenue<br>New Orleans, Louisiana 70170-5100<br>Tel:    (504) 582-8000<br>Fax:   (504) 582-8583<br>Email: mmintz@joneswalker.com<br><br>Kristina M. Johnson<br>*(Pro Hac Vice Application Forthcoming)*<br>JONES WALKER LLP<br>190 E. Capitol Street, Suite 800<br>Jackson, Mississippi 39201<br>Tel:    (601) 949-4900<br>Fax:   (601) 949-4804<br>Email: kjohnson@joneswalker.com |

*Counsel to Plaintiff Reorganized Debtor*
*PHI Aviation, LLC f/k/a PHI, Inc.*